# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**BETSY KRUTZIG,**

   **Plaintiff,**

v.                                                        Case No. 8:07-cv-2330-T-30TGW

**PULTE HOME CORPORATION**
**d/b/a Pulte Homes,**

   **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 19) and Plaintiff's Memorandum of Law in opposition to the same (Dkt. 25). The Court, having reviewed the Motion, Memorandum, and supporting documents, and being otherwise fully advised in the premises, determines the Motion should be granted.

## Background

In January of 2005, Betsy Krutzig ("Plaintiff") began employment as a sales associate with Defendant Pulte Home Corporation d/b/a Pulte Homes ("Defendant" or "Pulte"). Plaintiff was supervised by selling sales manager Janet Parsons. In or around March of 2005, Parsons placed Plaintiff on a performance improvement plan.[1] Plaintiff was informed that her overall performance was not at the level expected by the company and that there were

---

[1] According to Plaintiff, such a performance plan was customary for new hires after ninety days of employment.

concerns regarding her dedication to the job and her attitude towards training. Parson's report referenced two warnings issued to Plaintiff regarding her tardiness.

In March of 2006 and 2007, Plaintiff received additional performance evaluations from Defendant. Both evaluations indicated that Plaintiff was overall meeting expectations. Plaintiff, however, was not meeting expectations with respect to the building of relationships through referrals, networking, and realtor relationships. Plaintiff was also having problems with homeowners cancelling their contracts. Plaintiff believes the cancellations were out of her control and did not reflect upon her performance as a sales associate.

On or about June 21, 2007, Plaintiff fell and injured her foot at a local restaurant. While the injury did not prevent her from working, she required the assistance of crutches, a cane, and eventually a medical boot. According to Plaintiff, director of sales Jeff Cooper informed her that she could not take time off work as a result of the injury.[2]

In a Memorandum dated July 17, 2007, Parsons issued a written warning to Plaintiff regarding her closing of the office and model center early on two occasions. Parsons was warned non-compliance with company policies regarding tardiness and leaving work early could lead to termination. In a second written warning from Jeff Cooper dated July 24, 2007, Plaintiff was warned she had violated several sales policies and procedures. Specifically, Cooper informed Plaintiff that she (i) had failed to confirm whether a customer was already registered with another sales associate, (ii) had failed to collect the appropriate deposit from a customer with respect to a sale that never closed, (iii) had a larger number of customers

---

[2]As director of sales, Cooper supervised both Plaintiff and Parsons.

who were at risk of not closing than her colleagues, (iv) had allowed potential buyers to sign a cancellation form without management approval in violation of company policy, and (vi) had failed to perform competitive shops on the competition. In connection with these issues, Plaintiff was placed on a thirty day performance improvement plan.

On the morning of Friday, August 17, 2007, Plaintiff placed a telephone call to Jessica Hernandez-Parkman, Pulte's human resources representative, to request leave under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (the "FMLA").[3] According to Plaintiff, she explained to Hernandez-Parkman that she would be undergoing surgery on her foot and that she would need to take FMLA leave as a result. Plaintiff claims Hernandez-Parkman discussed the procedure with her and faxed her the requisite documents. Hernandez-Parkman also provided Plaintiff with contact information for Hartford Insurance Company ("Company") so that Plaintiff could also file a claim for short-term disability. Plaintiff provided Hernandez-Parkman with a certification of health care provider form and a doctor's note.[4] Plaintiff claims Hernandez-Parkman told her she had "received all the documents from me and simply told me how to proceed to go out on FMLA."[5] According

---

[3]At the time, Plaintiff was working on-site at a community in Sarasota, Florida. Hernandez-Parkman worked out of an office in Estero, Florida.

[4]While these documents have been referred to in depositions, they have not been filed in the record.

[5]Hernandez-Parkman claims she never received a copy of a request for leave form back from Plaintiff. She claims to have instructed Plaintiff to fill the form out with the appropriate dates and to have her supervisor sign it. Plaintiff claims Hernandez-Parkman provided her with a supervisor acknowledgment form that she was to have signed if possible but that it was not a necessary document. Whether or not she returned the document, it is undisputed that Plaintiff did not have the request acknowledged by a supervisor. Moreover, the FMLA Request for Leave form filed by Plaintiff in support of her opposition to the instant
(continued...)

to Hernandez-Parkman, she did not discuss Plaintiff's request with any other Pulte employees within the southwest division.[6] Plaintiff claims she did not discuss the request for leave with either Parsons or Cooper.[7]

Later that same day (August 17, 2007), Plaintiff met with a disgruntled customer, Donna Guerrieri, and her real estate agent. Guerrieri was dissatisfied because construction on her home had not been completed when promised. Guerrieri was also upset because the value of the home had decreased during the time it was under contract. As a result of her frustrations, Guerrieri had already sent a complaint letter to the President of Pulte. During the meeting, Guerrieri and her agent made a number of demands for concessions. According to Plaintiff, she went to Parsons and Cooper with Guerrieri's demands and Cooper adamantly refused to honor them. Plaintiff also claims that, despite Guerrieri and her agent's requests, Parsons and Cooper refused to join the meeting and would not meet her requested concessions.

Guerrieri and her agent were upset when they left the meeting. Guerrieri contacted Jill Hoffman, Pulte's vice president of sales and marketing, to complain about the meeting

---

[5](...continued)
motion was not signed by a supervisor and did not indicate a beginning or end date for the requested leave. The instructions that accompanied the form informed employees that a request for leave would not be approved absent supervisor/manager acknowledgment and completion of the Employee section (which included provision of a start and end date).

[6] The southwest division included Plaintiff's Sarasota location and the Estero office. Employees in these offices would have included Parson's, Cooper, and vice president of sales and marketing, Jill Hoffman.

[7] Plaintiff does claim that she attempted to have Parsons acknowledge the form, but that Parsons was not available.

and the refusal of her request to speak with upper management. Hoffman contacted Cooper and asked him to get involved and see what was going on. According to Cooper and Parsons, Plaintiff had never requested their presence at the meeting and assured them that she had everything under control.

The next day, August 18, 2007, Cooper requested a meeting with Plaintiff and Parsons. According to Plaintiff, Cooper informed her that it was the end of the road and that she had five minutes to leave the office. Plaintiff understood that her employment was being terminated. Plaintiff claims Cooper refused to tell her why she was being fired. According to Plaintiff, she then told Cooper "Jeff, I know that you're aware that I filed for FMLA." Cooper denied having knowledge of the FMLA request. Krutzig Dep. at 189. While Plaintiff was loading her car, Cooper approached her to ask for her keys. Plaintiff claims she told him "Jeff, are you sure you don't want to reconsider?" followed by "[a]n FMLA request is a federal law." Krutzig Dep. at 190. Cooper refused to reconsider and instructed her to leave the premises.

According to Cooper, he made the decision to terminate Plaintiff's employment based on her failure to adequately address the issues raised in her performance improvement plan, and as a result of the situation involving Guerrieri. Cooper and Parsons both claimed Plaintiff had lied about her request for them to join the meeting with Guerrieri.

The following Monday, August 20, 2007, Hoffman informed Hernandez-Parkman that Plaintiff had been terminated. After learning of the termination, Hernandez-Parkman told Kathy McGuire, the director of human resources for the area, about Plaintiff's FMLA request

the previous Friday. McGuire then followed up with Cooper and Parsons regarding the reasons for Plaintiff's termination. Hernandez-Parkman prepared a termination form to document the termination. Hoffman signed the form as the "initiating manager." According to McGuire, any manager up the chain to whom an employee reports can sign such a form as the initiating manager.

As a result of her termination, Plaintiff filed the instant action. Plaintiff's Complaint contains two counts, one for interference with FMLA rights (Count I), and a second for interference with ERISA rights (Count II). In Count II, Plaintiff argues that her termination interfered with her right to secure short-term disability benefits under Pulte's short-term disability plan. Pulte has moved for summary judgment on all of Plaintiff's claims.

## **Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Chelates, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).[8]

---

[8]Substantial evidence is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Verbraeken, 881 F.2d at 1045.

## Discussion

**I.  FMLA Claim**

Count I of Plaintiff's Complaint is entitled "Interference with FMLA Rights." Pursuant to the FMLA, an eligible employee is entitled to up to twelve workweeks of leave in a given year because "of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1).  It is unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" that right.   9 U.S.C. § 2615(a).  The Eleventh Circuit has recognized that §2615(a) creates two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA], and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]."  Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (internal citations omitted).

To establish an FMLA interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied . . . [t]he employee need not allege that his employer intended to deny the benefit - the employer's motives are irrelevant."  Id. (internal citations omitted).  Plaintiff alleges she was entitled to FMLA leave for a serious health condition.  The FMLA defines the term "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves– (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611.  The pertinent regulations of the Secretary of Labor

define "inpatient care" to mean "an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b), or any subsequent treatment in connection with such inpatient care." 29 C.F.R. § 825.114. The term "incapacity" is defined as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113.

> The regulations further provide as follows:
>
> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
>
> (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.
>
> (4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30-day period shall be determined by the health care provider.

> (5) The term "extenuating circumstances" in paragraph (a)(1) of this section means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. Whether a given set of circumstances are extenuating depends on the facts. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30-day period, but the health care provider does not have any available appointments during that time period.

29 C.F.R. § 825.115.

Plaintiff argues that she was entitled to the requested leave and that she was denied that leave. However, there is no medical evidence in the record to support Plaintiff's argument that she had a serious health condition and was thus entitled to the FMLA leave she requested. While the parties agree that Plaintiff submitted a certification of health care provider form to Hernandez-Parkman, neither party has pointed to any record evidence in support of Plaintiff's claim that she suffered from a serious health condition as defined under the applicable statutes and regulations.[9]

In Hurlbert, the Eleventh Circuit held that under the FMLA "a demonstration that an employee is unable to work in his or her *current job* due to a serious health condition is enough to show that the employee is incapacitated, *even if that job is the only one the employee is unable to perform*." Hurlbert, 439 F.3d at 1295 (emphasis in original). After reviewing the testimony of the plaintiff employee's physician, the court reversed the district court's entry of summary judgment on behalf of the employer because material issues of fact precluded summary judgment. In the instant case, Plaintiff has failed to provide any medical

---

[9]The Court notes that Defendants did not make this argument in the instant motion.

evidence or testimony substantiating Plaintiff's alleged condition and entitlement to FMLA leave.

Moreover, even if Plaintiff has established that she suffers from a serious health condition, she has failed to provide any evidence that she submitted a valid request for FMLA leave. Contrary to the instructions provided with her Request for Leave form, Plaintiff did not obtain a supervisor's acknowledgment and did not provide the dates for which she was requesting leave. Therefore, her request was incomplete.

Furthermore, there is no evidence in the record that Cooper, Parsons, and/or Hoffman made the decision to terminate Plaintiff with knowledge of her conversation with Hernandez-Parkman regarding her leave request. Thus, Plaintiff would have been terminated regardless of her request for FMLA leave. See Bones v. Honeywell Intern, Inc., 366 F.3d 869, 877 (10th Cir. 2004) (recognizing that although "the intent of the employer is immaterial" to an FMLA interference claim, "[i]f dismissal would have occurred regardless of the request for an FMLA leave . . . an employee may be dismissed even if dismissal prevents her exercise of her right to an FMLA leave.").

Plaintiff has not demonstrated by a preponderance of the evidence that she was entitled to the requested FMLA leave because she has failed to establish (i) that she suffered from a serious medical condition, and/or (ii) that she submitted a valid request for leave. Accordingly, Defendant's motion should be granted with respect to Plaintiff's interference claim.

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that: "(1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action." Hurlbert 439 F.3d at 1297. If a plaintiff establishes a prima facie case, "the burden then shifts to the defendant to articulate a legitimate reason for the adverse action." Id. If the defendant articulates such a legitimate reason, "the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual."

There is no dispute that Plaintiff engaged in a statutorily protected activity (requesting FMLA leave) or that she suffered an adverse employment action (her employment was terminated). Rather, the parties dispute whether there was a causal connection between her request and her termination.

Plaintiff argues she was terminated from her employment the day after she made the FMLA request. As stated in Hurlbert, "[c]lose temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Id. at 1298. However, an "exception to this rule applies when there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Id. (internal citations omitted).

While the parties disagree about who the decision maker was, this exception applies to the instant facts. Defendant argues Cooper made the decision to terminate Plaintiff. Cooper claims he made this decision and actually terminated Plaintiff on August 18, 2007.

Plaintiff argues Hoffman was the ultimate decision maker because she signed the termination papers as the "initiating manager." Even if Hoffman made the ultimate decision to terminate Plaintiff's employment, that decision was made on or before August 18, 2007.[10] There is no evidence in the record that Cooper, Parsons, or Hoffman were aware of Plaintiff's FMLA request at that time. Plaintiff's speculation that Cooper and/or Hoffman were aware of her FMLA request is insufficient to create a material issue of fact. Accordingly, Plaintiff has failed to establish a prima facie case for FMLA retaliation and Pulte is entitled to summary judgment regarding that claim.

## II.     ERISA Claim

In Count II of the Complaint, Plaintiff alleges a claim for interference with her rights under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Plaintiff claims that as a result of her termination, she was denied short-term disability benefits to which she was entitled under ERISA. Plaintiff argues Hartford denied her short-term disability benefits because she was not approved for FMLA leave.

To establish a prima facie case with respect to her ERISA claim, Plaintiff must establish that: (1) she is entitled to protection under ERISA, (2) she was qualified for the position, and (3) she was discharged under circumstances that give rise to an inference of discrimination. See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1223 (11th Cir. 1993). Plaintiff's ERISA claim fails for the same reason as her other claims. The only employee

---

[10]Hoffman may have been aware of the FMLA leave request when she signed the papers documenting Plaintiff's termination on August 20, 2007. However, the termination occurred on August 18, 2007.

who was aware of Plaintiff's desire to seek disability benefits prior to her termination was Hernandez-Parkman. Similar to her FMLA claims, there is no evidence Cooper, Parsons, or Hoffman were aware of her application for benefits prior to the termination of her employment. Thus, there can be no interference or inference of discrimination. Plaintiff has failed to establish a prima facie case with respect to her ERISA claim. Accordingly, Pulte is entitled to summary judgment as to all of Plaintiff's claims.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 19) is **GRANTED**.

2. The Clerk is directed to enter **FINAL SUMMARY JUDGMENT** in favor of Defendant and against Plaintiff.

3. Defendant's Unopposed Motion for Leave to File a Reply (Dkt. 26) is denied as moot.

4. All pending motions are denied as moot. The Clerk is directed to close this case.

5. Should Defendant desire to pursue its request for costs and fees, it is directed to file the appropriate motion.

**DONE** and **ORDERED** in Tampa, Florida on April 16, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2007\07-cv-2330.msj.frm